```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
THOMAS PATRICK DAVIS,

                    Plaintiff,

        -against-                          **MEMORANDUM AND ORDER**
                                           Case No. 17-CV-4883 (FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.
------------------------------------------------x
```

Appearances:
*For the Plaintiff*:                        *For the Defendant*:
CHRISTOPHER J. BOWES                        RICHARD P. DONOGHUE
54 Cobblestone Drive                        United States Attorney's Office
Shoreham, NY 11786                          Eastern District of New York
                                            271 Cadman Plaza East
                                            Brooklyn, NY 11201
                                            BY: MATTHEW SILVERMAN

**BLOCK, Senior District Judge:**

Thomas Patrick Davis seeks review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits. Both parties move for judgment on the pleadings. The Commissioner found that Davis is able to perform a range of sedentary work with several environmental and postural limitations, although with a need for regular breaks. Taking these limitations into account, and based on the testimony of a vocational expert, the Commissioner found that there exists work in significant numbers in the national economy that Davis

1

could perform. Because the Commissioner did not sufficiently develop the record and failed to account for evidence that was in the record when determining Davis's residual functional capacity ("RFC"), both parties' motions are denied and the case is remanded for further proceedings consistent with this Memorandum and Order.

## I.

Davis was born in 1974 and took some college classes, although he never graduated with a degree. He worked as a police officer for the New York City Police Department for two years and then as a firefighter for the New York City Fire Department for another decade. He was a responder during the September 11 terrorist attack on the World Trade Center.

Davis previously applied for benefits on October 2006. His application was based on a fracture in his left ankle sustained during a fall from a fire truck. He received benefits for a closed period from October 2006 through October 2007.

The present application was filed in October 2013. The alleged onset date is September 3, 2012 and is based on a broken talar dome, reflex sympathetic dystrophy ("RSD"),[1] depression, and pulmonary disorders related to the exposure at

---

[1] RSD, also known as "RSDS" and "CRPS," "is a chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03-2p, 2003 WL 22399117, at *1. Patients with RSD
> typically report persistent, burning, aching or searing pain that is initially localized to the site of the injury. The involved area usually has increased sensitivity to touch. The degree of reported pain is often out of proportion to the severity of the precipitating

the World Trade Center. Davis appeared with counsel before Administrative Law Judge ("ALJ") Jason Miller who denied the application by written order. This decision became final on June 13, 2017, when the Appeals Council denied review. The evidence developed by the ALJ was as follows.

**A.     Medical Evaluations**

   1.     <u>Musculoskeletal Impairments</u>

Davis's primary musculoskeletal impairment stems from an injury to his left ankle, for which he had surgery in January 2007. Since then, he has developed RSD, with what he has occasionally described as "excruciating" pain. Administrative Record ("AR") at 63. He is also clinically obese, with a body-mass index ("BMI") of 38 as per November 2013. As the ALJ noted, "a BMI of 30 or greater is indicative of obesity, and this condition could reasonably be affected to compound the severity of the claimant's existing left lower extremity dysfunction." AR at 13 (citing SSR 02-1p, 2002 WL 34686281).

Dr. Colden, a treating physician, also noted musculoskeletal problems beyond Davis's ankle. For example, he reported positive straight leg raising, myospasms in the lumbar spine, decreased sensation in the L5-S1 right side dermatome, lumbar

---

        injury. Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb. Cases have been reported to progress and spread to other limbs, or to remote parts of the body.

*Id.* at *2.

radicular pain, limited range of motion of the lumbar spine, and cervical spine tenderness. Davis could not perform heel or toe walking.

2. Respiratory Impairments

Davis was treated by Dr. Basti for some of his respiratory problems. He reported acid reflux, sinus drip, and a cough since working at the World Trade Center site. Prior to the alleged onset date, he had been diagnosed with chronic bronchitis with asthma. Although he once complained of chest pains and shortness of breath, a CT scan revealed normal findings.

3. Mental Impairments

Although Davis's primary care physician, Dr. Basti, had diagnosed Davis with anxiety, *see* AR at 419, much of the evidence concerning Davis's mental impairments was based on the findings of the Commissioner's consultative examiner, Dr. Knoll. Although she reported "essentially normal findings including cooperative behavior, adequate manner of relating, normal speech, coherent and goal directed though processes, intact attention and concentration, average cognitive functioning, and only midlly impaired recent and remote memory skills," she opined that Davis has "mild limitations performing simple tasks independently" and "would have moderate limitations performing complex tasks, and marked limitations appropriately dealing with stress." AR at 14; *see* AR at 263–67.

B. **Testimonial Evidence**

1. Davis's Testimony

At the ALJ hearing, Davis testified that he lives with his wife and parents. He is unable to work and has trouble sleeping; much of his day consists of watching television or occasionally going on short walks. He is unable to lift more than ten pounds for short amounts of time. Davis also testified that he sits with his legs raised because doing so alleviates the pain. *See* AR at 63.

2. Vocational Expert's Testimony

Andrew Vaughn testified as a vocational expert ("VE"). In response to several hypotheticals posed by the ALJ, the VE testified that a person with limitations and experience similar to Davis's may be able to work as a police radio dispatcher, a fire alarm dispatcher, an order clerk, or an addressing clerk, all of which are jobs that are listed in the Dictionary of Occupational Titles and which, the VE testified, exist in significant numbers in the national economy.[2]

Davis's attorney also asked the VE whether these jobs would still be available to an individual who had to sit with his legs elevated. The VE testified that it would depend on how high the elevation was due to ergonomic limitations in typical office environments. He testified that he would exclude all four occupations if the required

---

[2] The VE excluded the order and addressing clerks in hypotheticals where the claimant could only stand and/or walk for thirty minutes. He excluded all jobs in hypotheticals where the claimant was 15% off-task due to pain.

5

elevation was "eight inches, ten inches, approaching waist height." AR at 74.

**C.     ALJ's Decision**

The ALJ rendered his decision on April 19, 2016. Applying the familiar five-step sequential evaluation process,[3] he concluded at step one that Davis has not engaged in substantial gainful activity since the alleged onset date and has met the Social Security Act's insured status requirements through December 31, 2016. At step two, the ALJ found that Davis has three severe impairments: status-post left ankle fracture with surgery, with RSD in the left lower extremity; asthma; and obesity. The ALJ excluded diagnoses of high blood pressure, high cholesterol, and thyroid disorders. He also excluded mental impairments, including major depressive disorder and panic disorder, with which Davis had been diagnosed by a psychological consultative examiner.

At step three, the ALJ found that these impairments did not meet the criteria for any presumptively disabling impairment in the Listing of Impairments. The ALJ

---

[3] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

then determined that Davis had the following residual functional capacity ("RFC"):

> Davis has the [RFC] to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Specifically, he can lift and/or carry 10 pounds occasionally, less than 10 pounds frequently. He can sit, with normal breaks, for a total of 6 hours per 8-hour workday, but he can only stand and/or walk, even with normal breaks, for a total of just 2 hours per 8-hour workday. He can never use his left lower extremity to operate foot controls. In terms of postural limitations, he can never climb ladders, ropes, or scaffolds, and can never kneel or crawl, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, and crouch. Lastly, in terms of environmental limitations, he must avoid all exposure to unprotected heights and moving mechanical parts, and can tolerate only less than occasional exposure to respiratory irritants such as chemical fumes, industrial odors, dust, gases, extreme cold.

A.R. at 16. In determining Davis's RFC, the ALJ did not account for (or, indeed, mention) Davis's reported need to sit with his legs raised.

At step four, the ALJ found that Davis could not perform his past work as a police officer or firefighter because, as the VE testified, those are classified as "medium in exertion" and "very heavy in exertion," respectively. At step five, taking into account the RFC; Davis's age, education, and work experience; and the VE's testimony, the ALJ found that Davis is not disabled and that there are jobs that exist in significant numbers in the national economy that he can perform.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir.

7

2004). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971): it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Perales*, 402 U.S. at 401). "The court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Davis challenges the Commissioner's determination that he can perform the stated RFC. In particular, Davis objects to the fact that the ALJ failed to address Davis's need to elevate his legs while seated. He also objects to the finding that his mental impairments (particularly his depression) are not severe. Finally, he points to a study sponsored by the Social Security Administration that casts doubt on the notion that "addressing clerk," one of the jobs supplied by the VE, in fact still exists in significant numbers in the national economy. He argues that this undermines the VE's testimony, casting its entire reliability into doubt.

**A. Davis's Need to Elevate His Legs**

The ALJ committed legal error because he failed to address Davis's testimony concerning the need to elevate his legs. Of course, "the ALJ need not address every shred of evidence in the administrative record," *Wright v. Berryhill*, No. 3:17-cv-00501, 2018 WL 3993442, at *5 (D. Conn. Aug. 21, 2018), but he also may not

8

ignore "relevant and probative evidence which is available to him," *Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984). Not only is Davis's need to elevate his legs potentially outcome-determinative, it is also the sort of measure of pain reduction specifically contemplated by the Administration's own regulations. *See* 20 C.F.R. § 404.1529(c)(3)(vi) ("Factors relevant to your symptoms, such as pain, which we will consider include [a]ny measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.).").

The Commissioner points to the fact that this testimony is not supported by any medical evidence in the record. But it is also not contradicted by any medical evidence and the ALJ made no negative credibility determination as to the testimony—indeed, he failed to address it at all. This is striking in light of the fact that Davis's potential need to elevate his legs was not an off-hand comment but the subject of specific inquiries by Davis's attorney. *See* A.R. 72–73.

Most importantly, the ALJ cannot rely on negative evidence of symptoms to disregard positive evidence. *Correale-Englehart v. Astrue*, 687 F. Supp. 2d, 396, 436 (S.D.N.Y. 2010) ("[T]he ALJ cannot rely on evidentiary gaps when determining whether a plaintiff has a RFC to perform certain work; he must instead support his determination with positive evidence."); *Ray v. Astrue*, 649 F. Supp. 2d 391, 405 (E.D. Pa. 2009) ("The mere absence of an assessment of limitations in the treatment

9

notes does not render these notes inconsistent with [another doctor's] report."). If the ALJ was unsatisfied with Davis's testimony alone, it was his duty to develop the record. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2010) ("The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (discussing the ALJ's duty to solicit additional information from doctors).

## B.  Davis's Depression

Applying the so-called "paragraph B" criteria set out in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ determined that Davis's mental impairments did not qualify as "severe." Davis takes issue with this finding. First, he points to the fact that the agency's consultative examiner found that he has "mild" limitations performing simple tasks independently (a finding that the ALJ weighed heavily) and argues that such a limitation is inconsistent with a non-severe impairment. Second, he points to the fact that the examiner found that Davis would have "moderate limitations performing complex tasks, and marked limitations appropriately dealing with stress." The ALJ gave this opinion little weight in large part because he believed it was supported only by Davis's subjective reporting and because Davis did not seek psychiatric treatment. Davis takes issue with this dismissal because there is nothing in the examiner's report indicating that the conclusion was only

10

based on Davis's subjective reports and because he does in fact have a history of seeking psychiatric treatment, albeit not in an inpatient setting.

The Court need not reach Davis's first argument because, for the purposes of the five-step evaluation process, it is immaterial to Davis's application whether or not his mental disability is severe. The Commissioner need only find at step two that a claimant has at least one severe impairment. Once such a finding is made, all of the claimant's impairments, severe or otherwise, must be considered when determining the claimant's RFC:

> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5. Accordingly, the Commissioner must consider Davis's limitations—including his mild limitation of performing simple tasks independently—when determining his RFC.

On remand, the Commissioner would be well-served to carefully consider Davis's second argument. The examiner's conclusion that Davis has a moderate limitation performing complex tasks, and marked limitations appropriately dealing with stress were given little weight because, the ALJ found, those conclusions were

11

based only on Davis's subjective testimony. If true, that may be sufficient reason to weigh those conclusions less heavily, *see Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012), but it is not apparent what in the record the ALJ relies on in making that finding. Without further elaboration, the finding is not properly based on substantial evidence.

C.     **The Existence of the Addressing Clerk Position**

The Court declines to reach Davis's argument concerning whether the job of an "addressing clerk" continues to exist in significant numbers in the national economy. The Court notes, however, that "the Commissioner need show only one job existing in the national economy that the claimant can perform." *Sanchez v. Berryhill*, 386 F. Supp. 3d 174, 177 (S.D.N.Y. 2018) (alterations omitted) (quoting *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011)). Moreover, other courts in this circuit have rejected Davis's argument, noting that, "whether or not the DOT is an accurate assessment of the vocational landscape in today's world, it remains an accepted vocational resource per Social Security Administration Policy." *Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-0868, 2017 WL 3995590, at *14 (N.D.N.Y. Sept. 11, 2017); *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication,

the SCO) for information about the requirements of work in the national economy.").

### III.

For the foregoing reasons, both motions for judgment on the pleadings are denied, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**SO ORDERED**.

    /S/ Frederic Block  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
March 29, 2019